IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER,

                Plaintiff,           Case No. 3:02 CV 1348

   -vs-

                                         MEMORANDUM OPINION

KELCO, INC.,

                Defendant.

KATZ, J.

This matter is before the Court on the Receiver's motion for summary judgment as against the remaining Defendants, Kelco, Inc. ("Kelco"), Big Black Box, LLC, Financial Mark, LLC, Future Financial Assurance, Inc., Genesis Charitable Support Foundation, Inc., Genesis Viatical, Inc. ("Genesis"), Kelco Elder-Care Financial Services, LLC, Kelco Elder Settlement, LLC, Kelco Life, LLC, Kelco Life Trust X, Kelco West, LLC, Kelcomp, LLC, Keller Equine, LLC, Keller Properties, LLC, Kellington Farm, LLC, Kentucky Tax Credits, LLC, Life Long Holdings, LLC, Life Long Settlements, LLC, National Viatical Marketing, LLC, Senior Capital LLC, Viaco West, LLC, Stephen L. Keller ("Keller"), Robert Grant Sutherlin ("Sutherlin"), and Sterling Keith Drach ("Drach"). Also before the Court are Defendant Sutherlin and Drach's opposition and Plaintiff's reply thereto. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Court finds Plaintiff's motion is well taken.

**BACKGROUND**

This case is related to the universe of litigation arising out of *Liberte v. Capwill*, 5:99 CV 0818 (N.D. Ohio), which involves the viatical insurance industry. Contained within the *Liberte* litigation are two investor groups, one consisting of investors in Alpha Capital Group ("Alpha").

In August 1998, Kelco and Alpha Capital Group entered into an exclusive dealing agreement whereby Alpha agreed to only purchase viatical policies through Kelco. The agreement also allowed Alpha a first right of refusal for any policy offered by Kelco. Alpha purchased through Kelco approximately seventy-five policies with a face value of just over six million dollars. Ultimately, a significant number of policies were rendered valueless as they were rescinded due to fraud.

The Plaintiff's responsibilities in his capacity as Receiver include, among others, "to discharge his duties in a manner calculated to preserve the greatest monetary recovery for the maximum number of Alpha investors." *Liberte*, (Doc. No. 1290). In his capacity as the Alpha Receiver, William Wuliger commenced the present litigation in July 2002 against the above-mentioned defendants[1] alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count One), 18 U.S.C. § 1964;) violations of the 1933 Securities Act, 15 U.S.C. § 77 (Count Two); as well as claims of fraud (Counts Three and Four).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

---

[1] Previously, Defendants Christopher D. Conway, Scott B. Brown, Ryan H. Adams, Pat Shaughnessy, R. Chad Fannon, Todd Sparks, Pat Black, and Cam Rose were dismissed from this action on May 20, 2004 (Doc. No. 153).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## DISCUSSION

*A. Positions of the Parties*

In his motion for summary judgment, the Receiver states the Defendants are collaterally estopped from asserting their innocence as to Counts One, Three and Four based upon their criminal convictions in *United States v. Keller, et al.,* CR 02-95-2 (W.D. Ky). In addition, the Receiver requests summary judgment on Count Two on the basis that the Defendants admitted having sold unregistered viaticals and this Court, in a related case, held unregistered viatical settlements to constitute securities.

4

*Pro se* Defendant Drach objects to summary judgment, contending that his conviction is not a "final conviction" and that the allegations in the case *sub judice* are not identical to those of the criminal case. Drach denies any business relationship with Alpha and in his memorandum contends that Alpha breached the exclusive dealing agreement via misrepresentations. Additionally, Drach denies having any responsibilities with regard to the purchase or sale of viaticals, denies he was ever a part of Kelco's operations or that he had knowledge of viator misrepresentations until February 2000. Drach attempts to ascribe the Alpha investor losses entirely to James A. Capwill, who was convicted and is serving a prison term in connection with his conduct in the *Liberte* case. According to Drach, because Kelco was never convicted or indicted on securities fraud, such claims to this effect are without merit.

In his opposition, *pro se* Defendant Sutherlin contends that he had no ownership interest in Kelco group or other Defendant entities. Sutherlin also opposes the Receiver's collateral estoppel argument on the basis that his criminal conviction was appealed and therefore delays consideration of this argument as it pertains to this civil action.

*B. Collateral Estoppel*

The doctrine of collateral estoppel or issue preclusion has been deemed applicable both in criminal and civil actions. The Supreme Court in *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951) held that a prior criminal conviction may work an estoppel, however "such estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." (Citations omitted.) *See also, Hinchman v. Moore,* 312 F.3d 198, 202 (6th Cir. 2002). Most recently, the Sixth Circuit stated the requirements to establish collateral estoppel as follows:

5

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation,
> (2) the issue was actually litigated and decided in the prior action,
> (3) the resolution of the issue was necessary and essential to the judgment on the merits in the prior litigation,
> (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and
> (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Wolfe v. Perry,* 412 F.3d 707, 716 (6th Cir. 2005).

The critical factor, for purposes of this motion, is whether the issues in this litigation are identical to that resolved in the earlier criminal litigation. The criminal convictions in the Eastern District of Kentucky, purporting to support the Receiver's claim, require closer examination by this Court.

    1. *United States v. Keller, et al.,* Lexington CR. 02-95-4 KSF (E.D. Ky.)

Under Count 1 of the Indictment, Defendants Keller, Drach, Sutherlin, Kelco and Genesis were charged and convicted with conspiracy to commit mail and wire fraud. They were alleged to have "knowingly and willfully devise[d] and intend[ed] to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises" by means of the United States mails or wire communications. (Doc. No. 159, Ex. B1., p.3.) In carrying out the scheme to defraud, the Defendants marketed Kelco's services to terminally ill persons (including those with HIV); encouraged co-conspirators to apply for multiple policies which were then sold to Kelco or Genesis; devised methods on how to avoid insurance companies that had become suspicious of Kelco; encouraged applicants to apply for multiple small policies to exempt them from providing a medical exam; would arrange for blood samples not from the viators to submit to the insurance company, constituting a misrepresentation; conspirators would hide the fact that Kelco or Genesis was involved in the transaction (had Kelco

6

employees represent themselves as employees of other business concerns); discontinued dealing in policies in which life expectancy was less than 2 years for fear of raising concerns of insurance company; and relaying documents of the above through the mails. (Id. at pp. 3-6.)

In Counts 2-9 of the Indictment alleging mail fraud, Defendants Sutherlin, Keller, and Kelco were convicted of " knowingly deposit[ing] or caus[ing] to be deposited, to be sent or delivered by private or commercial interstate carriers, and took and received from such carriers, matters and things" such as purchase agreements and collateral assignments from October 1997 to July 1998, with Kelco, in most instances, being the sender and in one instance, the recipient thereto. (Id. at p. 8.)

Under Counts 10-23 alleging wire fraud, Sutherlin, Keller and Kelco were also convicted of "knowingly transmit[ting] or caus[ing] to be transmitted by means of wire communication, in interstate commerce, the below described writings, signs, signals, pictures and sounds" from Kelco to various recipients from July 1997 to September 1998. (Id. at pp. 9-10).

In Count 24, conspiracy to commit money laundering, Defendants Keller, Sutherlin, Drach, Kelco and Genesis were convicted of conducting financial transactions with the proceeds of mail and wire fraud to perpetuate the ongoing fraud, i.e. the payment of fraudulent policies and other expenses of the fraud scheme. Specifically, the manner and means of the money laundering was described as follows:

> 28. Kelco purchased life insurance policies with a face value in excess of $20 million knowing that such policies had been obtained through false and fraudulent misrepresentations to the insurance companies issuing the policies.
>
> 29. Kelco sold the fraudulently obtained life insurance policies to funding companies including Alpha Capital Group, LLC aka Alpha Financial Group, LLC, Trade Partner, Inc., Britannia Holdings Limited, Answer Care, and Arden Group, Ltd.

>30. The funding companies paid approximately $13 million for the fraudulently obtained life insurance policies either by mailing a check to Kelco or by wire transferring funds to Kelco's escrow account #xxxxxx979, account #xxxxxxx200, or account #xxxxxxx201, at Bank One in Lexington, Kentucky.
>
>31. The funding companies in turn sold the fraudulently obtained life insurance policies to individual investors.
>
>32. Kelco used the funds from the sale of the policies to the funding companies to pay the costs and expenses associated with its business such as, payments to the viators, payments to brokers, employee salaries and other office expenses, in an effort to promote the mail and wire fraud schemes.

(Id., pp. 12-13.)

Counts 25-46 addressed money laundering and these counts also resulted in convictions of Keller, Sutherlin, and Kelco as Kelco used funds from its escrow accounts at Bank One in Lexington to pay for fraudulently obtained insurance policies, to wit, "defendants, aiding and abetting one another, caused monies that had been paid to Kelco by the funding companies for the fraudulently obtained insurance policies to be transferred to the viators who had fraudulently obtained the life insurance policies, to promote the fraud." (Id., pp. 17-18.)

Defendant Genesis was convicted of Counts 1, 4-9, 11, 13, 15, 16, 22, 23, 24, 28-30, 33-36, 39, 40, and 46.

>2. *Wuliger v. Kelco, et al.,* Case No. 1:02 CV 1348 (N.D. Ohio)

The essence of the complaint in the instant litigation is that the individual Defendants were the principals in the Defendant entity companies and directly or indirectly procured the rights to death benefits from various insurance companies. It is alleged that the defendants encouraged the individuals or viators to lie regarding their true health status in order to obtain insurance policies. Once these policies were obtained by Kelco the policies were sold to funding companies such as

8

Alpha.  In this action, the specific charge under Count 1, alleging a claim under RICO, states in pertinent part:

> 72.  The defendants, as well as other individuals or corporations and companies including policy brokers who obtained policies on behalf of Kelco and/or any other named Defendants which were later sold to Alpha, comprise an enterprise within the meaning of 18 U.S.C. section 1961(4).
>
> 73.  Through the activities of this enterprise described above, defendants have engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. section 1961(1), (5), to wit, 2 or more instances of the following:
>
>     A.  Mail fraud, within the meaning of 18 U.S.C. section 1341, in that upon information and belief Defendants utilized the U.S. mails to further the scheme described above, whereby Defendants sold to Alpha and others insurance policies which it knew were obtained by fraud.
>
>     B.  Money laundering, within the meaning of 18 U.S.C. section 1956, in that Defendants engaged in financial transactions with the proceeds from the sale of fraudulently obtained policies with the intent to promote the carrying on of unlawful activity.
>
>     C.  Engaging in monetary transactions in property derived from specified unlawful activity, within the meaning of 18 U.S.C. section 1957, by engaging in monetary transactions in criminally deprived property of a value greater than $10,000 and derived from specified unlawful activity.
>
> 74.  Defendants have derived income from the aforesaid violations.
>
> 75.  Defendants have used this income to operate the enterprise described in paragraph seventy-two.
>
> 76.  The activities of this enterprise affect interstate commerce.
>
> 77.  The aforesaid conduct, which is in violation of 18 U.S.C. section 1964, resulted in injury to the property of the Alpha estate.

(Compl. at pp. 16-17.)

In Count Two, the Plaintiff alleges securities law violations based upon 15 U.S.C. §§ 77e, 77l, 77o, and 15 U.S.C. §§ 78(b) and 78(t).  Contending that viaticals are investment contracts, the

Plaintiff submits they must be treated as securities and the failure of the Defendants to comply with the relevant securities laws renders them liable as a matter of law.

Counts Three and Four are claims sounding in the nature of fraud. Count Three addresses the alleged misrepresentations by the Defendants "that the policies purchased by Alpha were obtained though legal, non-fraudulent means." (Compl., ¶ 87.) Count Four states that the "defendants knew or had reason to know that Alpha would put these policies in the general market place and that innocent investors would procure same without knowledge of the defective of same, such that the defendants aided and abetted in further commercialization of these fraudulent policies." (*Id.* at ¶ 92.)

### *3. Discussion*

In considering the RICO claim, it appears that the issues of money laundering and mail fraud are identical to those in the criminal action, were actually litigated, and resulted in criminal convictions regarding Defendants Sutherlin, Kelco and Genesis. The scheme to defraud in the criminal action was described as thus in the indictment:

> It was the object of the scheme and artifice to defraud that terminally ill persons would fraudulently obtain life insurance policies through use of false statements or other deceptions, and that those policies would be sold to investors without informing the ultimate investors or the insurance companies that the policies had been fraudulently obtained. The conspirators were to make money from the sale of the fraudulently obtained policies, but either the investor or the insurance company would lose money on the policy. If the insurance company discovered that the policy had been fraudulently obtained, it might cancel the policy for fraud, and the investor would lose his or her investment. If the insurance company did not discover that the policy had been obtained fraudulently, the insurance company would eventually pay the death benefits on the fraudulent policy when the insured died.

(Indictment at ¶ 10.)

The same allegations are raised in the complaint *sub judice*.  Since Defendants Keller, Sutherlin, Kelco and Genesis were parties to the criminal action and were convicted following a jury trial, the allegations contained in the RICO claim are sufficient to meet the first prong of the collateral estoppel analysis.   Moreover, all the Defendants were convicted of conspiracy to commit mail and money fraud as well as conspiracy to commit money laundering.

With regard to the claims of fraud alleged in Counts Three and Four of the present complaint, they allege the same fraudulent conduct as contained in the criminal indictment.

As the claims in the criminal action were tried to a jury and those findings upheld on appeal, the Court finds that the elements regarding collateral estoppel are satisfied and Defendants herein are estopped from contesting liability as to the claims contained in Counts One, Three and Four.

*C.  Appeal of Convictions*

Two of the individual Defendants, Drach and Sutherlin, argue that summary judgment is inappropriate since their appeals are still pending with the Sixth Circuit.  This argument is without merit.  On December 21, 2004, the Sixth Circuit upheld the convictions of Defendants Sutherlin, Keller and Drach.  *United States v. Sutherlin, et al.,* 118 Fed. Appx. 911 (6th Cir. 2004), *cert. denied*, 126 S.Ct. 391 (2005).  In that decision, the appellate court addressed challenges by the Defendants to jury instructions and admission of evidence.  In particular, the Sixth Circuit discussed the role of Drach, who challenged his conviction on the basis of insufficiency of evidence, as follows:

> After reviewing the evidence in the light most favorable to the prosecution, we reject Drach's claim.  As Chief Financial Officer of Kelco, the principal corporate entity through which the defendants operated, Drach played a pivotal role in the viatical insurance scheme.  The evidence demonstrated that Drach knew about the

11

>fraudulently obtained policies, that he knew Kelco was deceiving insurance companies as part of the fraud, and that he willfully became a member of the scheme and participated in the fraud. The evidence also supported his conviction of conspiracy to commit money laundering. He agreed to conduct financial transactions with the proceeds of mail and wire fraud to promote the ongoing fraud. Drach was responsible for receiving millions of dollars from the resale of fraudulent life insurance policies. He then used this money to pay for legitimate and illegitimate expenses.

*Id.* at 914. As the convictions have been affirmed, the Defendant's objections are not well taken.

*D. Adverse Inference*

In his motion for summary judgment, the Receiver states that during the Rule 30(b)(6) deposition, Defendant Sutherlin consistently asserted his Fifth Amendment privilege to nearly every question posed to him. The Court has reviewed Sutherlin's deposition (Doc. No. 159, Ex.D). In a deposition which concluded in a little over an hour, Sutherlin asserted his Fifth Amendment privilege no less than approximately 103 times. At the conclusion of his deposition, his lawyer confirmed that Sutherlin would assert his Fifth Amendment privilege to any questions related to subjects in the 30(b)(6) notice. On the basis of Sutherlin's continual refusal to answer any substantive questions, the Receiver requests an adverse inference under *Baxter v. Palmigiano,* 425 U.S. 308 (1976).

Defendant Sutherlin objects to the use of adverse inference in this proceeding, yet he does not request an opportunity to address the issues (now that the criminal process has ended) nor does he attempt to introduce any evidence which would raise a genuine issue of material fact. His prolonged silence in the absence of offering any affirmative evidence to the contrary supports the use of adverse inference in the Plaintiff's favor.

*E. Securities Violations*

Finally, the Receiver seeks summary judgment for violations of securities laws based upon this Court's previous determination of the same in *Wuliger v. Christie*, 310 F.Supp.2d 897 (N.D. Ohio 2004).  In that case, the Court determined that a viatical investment vehicle, such as the ones the subject of this suit, were to be considered securities under relevant federal and state law.  *Id.* at pp. 902-907.  Defendant Drach questions whether such viatical investments are securities under state law and claims no awareness of any securities violations by Kelco.

Although the Kentucky state courts have not addressed the precise issue at hand, it is clear that in adjudicating whether an investment contract is a security subject to regulation, Kentucky courts also employ the same analysis pursuant to *S.E.C. v. Howey,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).  *See Scholarship Counselors, Inc. v. Waddle,* 507 S.W.2d 138 (Ky. 1974).  Hence, this Court is confident that if the Kentucky courts were faced with adjudication of this issue, they would deem a viatical investment a security under the *Howey* test.  *Id.*

## CONCLUSION

For the reasons stated above, the Court finds Plaintiff's motion for summary judgment (Doc. No. 158) is  granted as to liability regarding Defendants Kelco, Inc., Big Black Box, LLC, Financial Mark, LLC, Future Financial Assurance, Inc., Genesis Charitable Support Foundation, Inc., Genesis Viatical, Inc.,Kelco Elder-Care Financial Services, LLC, Kelco Elder Settlements, LLC, Kelco Life, LLC, Kelco Life Trust X, Kelco West, LLC, Kelcomp, LLC, Keller Equine, LLC, Keller Properties, LLC, Kellington Farm, LLC, Kentucky Tax Credits, LLC, Life Long Holdings, LLC, Life Long Settlements, LLC, National Viatical Marketing, LLC, Senior Capital, LLC, Viaco West, LLC, Stephen L. Keller, Robert Grant Sutherlin, and Sterling Keith Drach.

Receiver shall submit affidavits in support of damages on or before February 10, 2006.

IT IS SO ORDERED.

    S/ *David A. Katz*
DAVID A. KATZ
SENIOR U. S. DISTRICT JUDGE